**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DANIEL S. BREWER,                      :
                                       :   Civil Action No. 08-1208 (JBS)
              Plaintiff,               :
                                       :
                                       :
              v.                       :   **OPINION**
                                       :
GEORGE HAYMAN, et al.,                 :
                                       :
              Defendants.              :

**APPEARANCES:**

        DANIEL S. BREWER, Plaintiff pro se
        503 Garfield Avenue
        Apt. 403
        Jersey City, New Jersey 07305

**SIMANDLE**, District Judge

        Plaintiff Daniel S. Brewer, currently residing at 503 Garfield Avenue, Apt. 403, in Jersey City, New Jersey, seeks to bring this action in forma pauperis, alleging claims against certain state officials for violations of his constitutional rights while plaintiff was incarcerated at the South Wood State Prison ("SWSP") in Bridgeton, New Jersey. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

        At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be

dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.  BACKGROUND

Plaintiff, Daniel S. Brewer ("Brewer"), brings this action against the following defendants: George Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Katharine MacFarland, Administrator at SWSP; Darlene Davis, a correctional officer with the rank of lieutenant at the SWSP; Kevin McNear, SWSP correctional officer; SCO Elliot, SWSP correctional officer; Robert Melendez, an investigator with the Special Investigation Division at SWSP; Dr. Eddy Ortega, Director of Psychological Services at SWSP; Correctional Medical Services ("CMS"), contracted by the NJDOC to provide medical services for the state prison population; and Correctional Behavioral Solutions ("CBS"), a subsidiary of CMS.  (Complaint, Caption and ¶¶ 3-11).

The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

On February 28, 2006, Brewer filed an administrative remedy against unit officers at SWSP alleging that they had allowed

someone to enter plaintiff's cell and steal his personal property while plaintiff was in the prison infirmary.  Brewer asked defendant SCO Elliott if she knew who took his personal property.  Brewer admits that he became agitated with her and asked to see the area sergeant.  (Compl., ¶¶ 14-15).

Elliott told defendant McNear about Brewer's complaint.  McNear entered Brewer's cell and threatened plaintiff to drop his complaint.  McNear then punched Brewer in the face several times, knocking out several teeth and causing plaintiff to have an epileptic seizure.  McNear left plaintiff laying on the floor without calling for medical assistance.  (Compl., ¶¶ 16-17).

When recreation was called out, Brewer came out of his cell.  He was yelling profanities at McNear and asked why McNear hit him.  A "Code 33" was called and Brewer was taken to detention on charges of assaulting McNear.  Defendant Davis filed a "use of force" report, which indicated that several officers were hurt in the altercation with plaintiff.  Brewer states that the charges were false and that the report failed to show that plaintiff's right eye was swollen and his teeth were knocked out.  (Compl., ¶¶ 18-19).

Brewer next alleges that a nurse had observed plaintiff's swollen eye and bloody mouth but was unable to examine or treat him because plaintiff was very agitated.  Another nurse refused to treat him because of his agitated state, but noted that he was

upset by what he considered to be a "cover-up" of the assault by McNear.  (Compl., ¶¶ 20-21).

Brewer complains that defendant Dr. Ortega falsely diagnosed plaintiff as suicidal and recommended that he be transferred to St. Francis Medical Center.  He had plaintiff placed on "camera watch" because he complained about being assaulted by guards. Brewer also contends that Defendant Investigator Melendez conducted a biased investigation of the incident and failed to take statements from other inmates concerning the incident. McNear also ignored plaintiff's complaint about the assault. (Compl., ¶¶ 22-26).

Brewer next alleges that defendants CMS and CBS, through their employees, refused to provide him with adequate medical and psychological care after he became agitated from the assault. Plaintiff was strapped in a restraint chair and forcefully medicated.  He was then transferred to New Jersey State Prison. On March 18, 2006, plaintiff was transferred to Northern State Prison and his disciplinary charges were dropped.  He was released from prison on January 10, 2007.  (Compl., ¶¶ 27-30).

Brewer seeks punitive damages from defendants MacFarland and Hayman in the amount of $1.5 million, and punitive damages from defendants CMS and CBS in the amount of $1 million.  He also seeks a declaratory judgment that all of the defendants violated his constitutional rights.  Finally, Brewer seeks injunctive

relief enjoining defendants MacFarland and Hayman to appoint independent monitors of SWSP for one year to study assaults by prison guards.[1]

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Here, plaintiff was a prisoner who is proceeding in forma pauperis, and he is asserting claims against government prison officials with respect to incidents occurring while he was confined.  Consequently, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because he is proceeding as an indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197,

---

[1] Because plaintiff is no longer incarcerated at SWSP, his request for injunctive relief is denied as moot.

2200 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  A pro se prisoner plaintiff simply need comply with the pleading requirements of Rule 8(a)(2).  See Erickson, 127 S.Ct. at 2200 "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell v. Atlantic Corp. v. Twombly, 550 U.S. ___, ___ (2007) (slip op., at 7-8) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Thus, a pro se prisoner plaintiff may allege only enough factual matter (taken as true) to suggest the required elements of the claim(s) asserted. Twombly, supra; Phillips v. Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  Further, the Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the

United States Constitution.[2]  Section 1983 provides in relevant
part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

IV.  ANALYSIS

A.  Excessive Force Claim

Brewer's allegations assert that defendant McNear used
excessive force against plaintiff in violation of the Eighth
Amendment because he is a convicted prisoner.  See Graham v.
Connor, 490 U.S. 386, 392-394 (1989)(cases involving the use of
force against convicted individuals are examined under the Eighth
Amendment's proscription against cruel and unusual punishment).

---

[2]  Brewer also invokes the Americans with Disability Act,
but asserts no facts to support a claim under the Americans with
Disability Act.  Accordingly, any claim purportedly made under
the Americans with Disability Act will be dismissed for failure
to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Id. at 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of

pain varies also according to the nature of the alleged
constitutional violation.  <u>Hudson</u>, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core
inquiry as to the subjective component is that set out in <u>Whitley
v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted):
"'whether force was applied in a good faith effort to maintain or
restore discipline or maliciously and sadistically for the very
purpose of causing harm.'"  <u>Quoted in</u> <u>Hudson</u>, 503 U.S. at 6.
"When prison officials maliciously and sadistically use force to
cause harm, contemporary standards of decency always are
violated."  <u>Id.</u> at 9.  In such cases, a prisoner may prevail on
an Eighth Amendment claim even in the absence of a serious
injury, the objective component, so long as there is some pain or
injury and something more than <u>de minimis</u> force is used.  <u>Id.</u> at
9-10 (finding that blows which caused bruises, swelling, loosened
teeth, and a cracked dental plate were not <u>de minimis</u> for Eighth
Amendment purposes).

To determine whether force was used in "good faith" or
"maliciously and sadistically," courts have identified several
factors, including:

> (1) "the need of the application of force"; (2) "the
> relationship between the need and the amount of force
> that was used"; (3) "the extent of injury inflicted"
> (4) "the extent of the threat to the safety of staff
> and inmates, as reasonably perceived by responsible
> officials on the basis of the facts known to them"; and
> (5) "any efforts made to temper the severity of a
> forceful response."

10

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting
Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force
is "excessive" and will give rise to the level of a
constitutional violation.  See Hudson, 503 U.S. at 9 (it is clear
that not "every malevolent touch by a prison guard gives rise to
a federal cause of action").  Therefore, "[n]ot every push or
shove, even if it may later seem unnecessary in the peace of a
judge's chambers, violates a prisoner's constitutional rights."
Id. at 9-10.

Here, Brewer alleges that McNear brutally assaulted him
without provocation by punching him in the face several times.
Brewer also appears to claim that McNear acted maliciously
because plaintiff had filed an administrative remedy concerning
property stolen from his cell.  Further, Brewer asserts that he
sustained serious injuries, a swollen eye and teeth knocked out,
thus suggesting that his injuries were not de minimis.[3]
Therefore, based on the allegations in the Complaint, if true, it
would appear that Brewer has asserted facts sufficient to suggest
that McNear exhibited malicious and sadistic conduct intended to

---

[3]  "[T]he Eighth Amendment analysis must be driven by the
extent of the force and the circumstances in which it is applied;
not by the resulting injuries."  Smith v. Mensinger, 293 F.3d
641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing
an excessive force claim is whether the force was applied
maliciously and sadistically to cause harm.  Id. at 649; Brooks,
204 F.3d at 106.  Otherwise, an inmate "could constitutionally be
attacked for the sole purpose of causing pain as long as the
blows were inflicted in a manner that resulted" in injuries that
were de minimis.  Id.

cause plaintiff pain.  Such conduct, if true, is "repugnant to the conscience of mankind" absent extraordinary circumstances necessary to justify that kind of force.  <u>Hudson</u>, 503 U.S. at 10. Accordingly, this Court will allow this claim to proceed past the screening stage.

Furthermore, to the extent that Brewer also is asserting a common law tort claim of assault and battery against defendant McNear, the Court finds that supplemental jurisdiction may be exercised under 28 U.S.C. § 1367(a) because such claim is plainly related to plaintiff's Eighth Amendment excessive force claim, over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

B.   <u>Failure to Protect or Supervise Claim</u>

Next, Brewer alleges that defendants MacFarland, Administrator at SWSP, and Hayman, Commissioner of the NJDOC, at the time, failed to institute any policies or take corrective actions to protect SWSP inmates from "rogue" conduct by correctional officers, namely assault, stealing inmate personal propery, and the filing of false disciplinary charges, in violation of the Eighth Amendment.  This Court also finds that plaintiff may be asserting a failure to protect claim with respect to defendant SCO Elliott because Elliott let McNear enter plaintiff's cell and did nothing to stop the assault on plaintiff.

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

As discussed above, to successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim. The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143,

13

147 (3d Cir. 1985).  "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  Farmer, 511 U.S. at 834.

Here, Brewer alleges generally that defendants Hayman and MacFarland "knew of the culture of guards assaulting inmates at SWSP" and the fabrication of false disciplinary charges against inmates but did nothing to protect the inmates or prevent further abuses and assaults by the defendant correctional officers.  This allegation may be sufficient, at this early screening stage, to withstand dismissal because it tends to show that defendants Hayman and MacFarland were informed or should have known about a pattern of assault and false disciplinary charges by correctional officers at SWSP.  See Nami, 82 F.3d at 67-68; Farmer, 511 U.S. at 842; accord Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F.Supp. 193, 199-200 (D.N.J. 1997). Accordingly, the Court will allow this failure to protect claim proceed against defendant Hayman and MacFarland.[4]

_____

[4]  This Court notes that Brewer has brought this claim against defendants Hayman and MacFarland in their "official capacities."  Generally, a suit against a public servant in his

14

Likewise, Brewer has asserted sufficient facts to show that defendant Elliott knew of the assault, and in fact witnessed the incident, but did nothing to stop or prevent the assault from happening.  Therefore, this failure to protect claim will be allowed to proceed at this time with respect to defendant Elliott.

---

*official capacity* is a suit against the public entity employing the public servant.  In other words, an *official capacity* suit generally represents an action against an entity of which an officer is an agent.  See Hafer v. Melo, 502 U.S. 21 (1991).  However, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).  Therefore, to the extent that plaintiff is suing defendants Hayman and MacFarland for money damages, as alleged, in their official capacities, these defendants are immune from suit pursuant to the Eleventh Amendment.

Nevertheless, it appears from the allegations in the Complaint that plaintiff may be using the "official capacity" term mistakenly.  Instead, the Complaint suggests that plaintiff is alleging that the defendants were supervisory officials who knew or should have known about the assaults by prison guards at SWSP, as opposed to the individual correctional officers who actually assaulted him or allowed the assault to occur without doing anything to protect plaintiff.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).  Here, Brewer alleges enough facts to suggest that defendants Hayman and MacFarland may have had personal knowledge of the situation at SWSP to support his failure to protect claim at this early stage of litigation.  Therefore, this Court will allow the failure to protect claim against these supervisory officials to proceed at this time.

C.  <u>False Disciplinary Charges</u>

Brewer next claims that defendants Elliott, Davis and
Melendez fabricated disciplinary charges against plaintiff to
cover up McNear's assault of plaintiff.  This Court finds no
cognizable claim under § 1983.

The act of filing false disciplinary charges does not itself
violate a prisoner's constitutional rights.  See <u>Freeman v.
Rideout</u>, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the
mere filing of [a false] charge itself" does not constitute a
cognizable claim under § 1983 so long as the inmate "was granted
a hearing, and had the opportunity to rebut the unfounded or
false charges"), <u>cert</u>. <u>denied</u>, 485 U.S. 982 (1988); <u>Hanrahan v.
Lane</u>, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as
prison officials provide a prisoner with the procedural
requirements outlined in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558
(1974), then the prisoner has not suffered a constitutional
violation).  <u>See also</u> <u>Creter v. Arvonio</u>, No. 92-4493, 1993 WL
306425, at *7 (D.N.J. Aug. 5, 1993); <u>Duncan v. Neas</u>, No. 86-109,
1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the
alleged knowing falsity of the charge [does not state] a claim of
deprivation of a constitutionally protected liberty interest ...
where procedural due process protections were provided").  In
this case, Brewer does not allege that he was denied an
institutional disciplinary hearing or an opportunity to present
evidence.  In fact, it appears from plaintiff's allegations in

16

the Complaint that the disciplinary charges were eventually
dropped, and plaintiff was released from prison shortly
thereafter.  Accordingly, Brewer has failed to state a cognizable
claim under § 1983 with respect to the alleged false disciplinary
charges.

D.  Failure to Provide Medical and Psychological Care

Finally, Brewer complains that defendants CMS, CBS and
Ortega failed to provide him with adequate medical and
psychological attention after the assault by McNear on February
28, 2006.

The Eighth Amendment proscription against cruel and unusual
punishment also requires that prison officials provide inmates
with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-
04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In
order to set forth a cognizable claim for a violation of his
right to adequate medical care, an inmate must allege:  (1) a
serious medical need; and (2) behavior on the part of prison
officials that constitutes deliberate indifference to that need.
Estelle, 429 U.S. at 106; Natale v. Camden County Correctional
Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if

17

those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  The Third Circuit has defined a serious medical need as:
(1) "one that has been diagnosed by a physician as requiring
treatment;" (2) "one that is so obvious that a lay person would
recognize the necessity for a doctor's attention;" or (3) one for
which "the denial of treatment would result in the unnecessary
and wanton infliction of pain" or "a life-long handicap or
permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d
Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d
217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145
(D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly,

"mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v.

19

<u>O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993); <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. 1990).

Here, Brewer alleges that several nurses did not treat him for his swollen right eye and bloody mouth because he was too agitated.  He also alleges that Dr. Ortega falsely diagnosed him as "suicidal" and placed him on "camera watch" because he complained about being assaulted by prison guards.  Dr. Ortega purportedly recommended that plaintiff be transferred to St. Francis Medical Center, but instead, Brewer was strapped in a restraint chair and forcefully medicated before being transferred to New Jersey State Prison.  These allegations by plaintiff do not show any serious medical need, or that the defendants acted with deliberate indifference to Brewer's physical and alleged psychological needs.

In fact, Brewer admits that the nurses attempted to treat him but could not do so given his agitated state.  Dr. Ortega also treated plaintiff for his psychological condition and placed plaintiff under observation and treated Brewer for his medical and psychological needs.  At best, Brewer's allegations simply show that the medical defendants attempted to provide the medical and psychological attention they had determined that plaintiff needed at that time, and plaintiff merely disagrees with their plan or course of treatment.  As referenced above, "mere disagreements over medical judgment do not state Eighth Amendment claims."  <u>White</u>, 897 F.2d at 110.  Therefore, even if Dr.

Ortega's judgment concerning Brewer's psychological condition was mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.

Based on plaintiff's allegations, this Court finds that Brewer had received prompt medical and psychological attention, and the medical defendants' actions in treating and responding to Brewer's medical and mental health needs do not reflect any deliberate indifference; nor do the allegations show that there was a delay in treatment for non-medical reasons.  Accordingly, this claim will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## V.   <u>CONCLUSION</u>

Therefore, for the reasons set forth above, plaintiff's claims alleging excessive force and failure to protect, in violation of the Eighth Amendment, will be allowed to proceed at this time against defendants, McNear, Elliott, Hayman and MacFarland.  Further, because the common law tort claim of assault and battery is related to the excessive force claim, the Court will exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a).  However, the false disciplinary charge claim as against defendants McNear, Elliott, Davis and Melendez, and the denial of medical/psychological care claim asserted against defendants, CMS, CBS and Dr. Ortega, will be

dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Further, plaintiff's claim under the Americans With Disabilities Act will be dismissed for failure to state a claim.  Finally, plaintiff's request for injunctive relief will be dismissed as moot since he is no longer incarcerated.  An appropriate order follows.

       **s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Dated: **May 27, 2008**